Andrew H. Griffin, III, (State Bar Number 108378)
**Law Offices of ANDREW H. GRIFFIN, III**
275 E. Douglas Avenue, Suite 112
El Cajon, CA 92020-4547
(619) 440-5000 Telephone
(619) 440-5991 Facsimile

Attorney for Debtor in Possession,
Scott I. Talle

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In Re:                                                    )    Case No.: 12-11243-LT11
                                                          )
Scott I. Talle,                                           )    Chapter 11
                                                          )
            Debtor in Possession.                         )    **FIFTH AMENDED DISCLOSURE**
                                                          )    **STATEMENT IN SUPPORT OF**
                                                          )    **CHAPTER 11 PLAN DATED JUNE 1,**
                                                          )    **2014, OF SCOTT I. TALLE**
                                                          )
                                                          )    Judge: Honorable Laura S. Taylor
                                                          )
_____ )

Prepared by:

Andrew H. Griffin, III, (State Bar Number 108378)
Law Offices of Andrew H. Griffin, III
275 E. Douglas Avenue, Suite 112
El Cajon, CA 92020-4547
(619) 440-5000 Telephone
(619) 440-5991 Facsimile

On behalf of:
Scott I. Talle
Debtor and Debtor in Possession

**TABLE OF CONTENTS**

PART I................................................................................................................. 6

INTRODUCTION

A. The Purpose of the Disclosure Statement…………………………………………....…… 6

PART II............................................................................................................ 8

CONFIRMATION REQUIREMENTS:

VOTE REQUIRED FOR APPROVAL OF THE PLAN………………………………… 8

   A.  Who May Vote or Object …………………………………………………………  8

      1.   Who May Object to Confirmation of the Plan…………………..…………..…  8

      2.   Who May Vote to Accept/Reject the Plan……………………………………  8

        a.   What is an Allowed Claim/Interest……………………………………  8

        b.   What is an Impaired Claim/Interest……………………………..……  9

      3.   Who is Not Entitled to Vote…………………………………………………....  9

      4.   Who Can Vote in More than One Class……………………………………...…  10

      5.   Votes Necessary to Confirm the Plan ……………………………………..…… 10

      6.   Votes Necessary for a Class to Accept the Plan…………………………..…… 10

      7.   Treatment of Nonaccepting Classes: Absolute Priority

        a.   Secured Claims………………………………………………………  11

        b.   Unsecured Claims……………………………………………………  12

      8.  Request for Revaluation of Real Properties…………………………………...  13

PART III…………………………………………………………………………………  14

DESCRIPTION OF THE PLAN………………………………………………………...  14

   A.  What Creditors and Interest Holders will Receive Under the Proposed Plan…………….  14

   B.  UNCLASSIFIED CLAIMS……………………………………………………  14

      1.   Administrative Expenses………………………………………………………  14

      2.   Court Approval of fees Required………………………………………..……  15

      3.   Priority Tax Claims…………………………………………………….....……  15

    C. Classified Claims and Interests…………………………………………..…..……….…… 16

        1. Classes of Secured Claims………………………………………………………… 16

        2. Class of General Unsecured Claims………………………………………………… 22

        3. Classes of Interest Holders…………………………………………………… 23

    D. Other Provisions of the Plan……………………………………………………… 24

        1. Effective Date of the Plan…………………………………………………… 24

        2. Executory Contracts and Unexpired Leases……………………………………… 24

            a. Assumptions……………………………………………………………… 24

            b. Rejections………………………………………………………………… 24

PART IV…………………………………………………………………………………… 25

MEAN OF EFFECTUATING THE PLAN…………………………………………………… 25

    A. Funding for the Plan…………………………………………………………………… 25

    B. Disbursing Agent……………………………………………………………………… 26

PART V……………………………………………………………………………..………… 26

CASH REQUIREMENTS…………………………………………………………..…….…… 26

PART VI……………………………………………………………………………………...… 26

ADMINISTRATIVE EXPENSES……………………………………………………………… 26

PART VII……………………………………………………………………………...…..…… 27

LEGAL PROCEEDINGS……………………………………………………………...…… 27

PART VIII……………………………………………………………………………………… 27

DESCRIPTION OF THE DEBTOR…………………………………………………………… 27

A.    Description and History of the Debtor's Business…………………………………… 27

B.    Principals/Affiliates of Debtor's Business…………………………………………… 27

PART IX……………………………………………………………………………...…… 28

REASONS FOR FINANCIAL DIFFICULTIES AND CORRECTIONS OF THOSE FACTORS.. 28

A.    Reasons for Financial Difficulties…………………………………………………… 28

B.    Reasons for the Chapter 11 Filing…………………………………………...…… 28

C.      Corrections of These Factors ……………………………………….... 28

PART X……………………………………………………………………… 28

ASSETS AND VALUATION…………………………………..……........ 28

PART XI.…………………………………………………………….….…..... 30

LIABILITES ……………………………………………………………..—.. 30

PART XII. ……………………………………………………………….…. 31

HISTORICAL AND CURRENT FINANCIAL INFORMATION……………………………………..…. 31

PART XIII. …………………………………………………………………. 31

LIQUIDATION ANALYSIS…………………………………………………. 31

PART XIV. …………………………………………………………………. 34

FEASIBILITY……………………………………………………………..………. 34

PART XV. ………………………………………………………………. 36

FINANCIAL PROJECTIONS…………………………………………………. 36

PART XVI. ………………………………………………………………. 36

MARKETING EFFORTS………………………………………………………. 36

PART XVII.…………………………………………………………...……. 36

POST-PETITION EVENTS…………………………………………………….…. 36

PART XVIII.…………………………………………………………………. 37

MANAGEMENT COMPENSATION……………………………………….......... 37

PART XIX. ………………………………………………………………. 37

INSIDER AND AFFILIATE CLAIMS…………………………………………. 37

PART XX. ………………………………………………………………. 37

UNITED STATES TRUSTEE SYSTEM FUND FEES …………………………………. 37

PART XXI. ………………………………………………………………. 37

TAX ANALYSIS………………………………………………………………. 37

A.      Tax Impact on the Debtor………..………………………………………. 38

PART XXII.……………………………………………………………….  39

RISKS TO CREDITORS UNDER THE PLAN………………………………..…  39

A.      Risks of Future Income ………………………………………………  40

B.      Liquidation of Claims…………………………………………………  40

PART XXIII ……………………………………………………………….…..  40

DEFAULT PROVISIONS………………………………………………………  40

A.      Post-Confirmation Conversion/Dismissal……………………………  41

B.      Revocation of the Order Confirming the Plan………………………..  41

PART XXIV……………………………………………………………….…..  41

EFFECT OF CONFIRMATION OF PLAN……………………………………  41

A.      Discharge…………………………………………………………....  41

B.      Revesting of Property in the Debtor…………………………………  42

C.      Modification of the Plan………………………………………….…  42

D.      Post-Confirmation Status Reports……………………………..…...  42

E.      Final Decree………………………………………………………….  42

F.      Retained Bankruptcy Court Jurisdiction…………………………….  42

PART XXV……………………………………………………………….…...  43

DISCLAIMER…………………………………………………………………  43

FIFTH AMENDED DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 PLAN DATED JUNE 1, 2014, OF SCOTT I. TALLE

## PART I
## INTRODUCTION

On August 14, 2012, Scott I. Talle (the "Debtor") and Jody A. Talle, filed a voluntary petition under Chapter 11 petition under the United States Bankruptcy Code. On April 25, 2014, the Court dismissed Jody A. Talle (see docket no. 167) as Co-Debtor. The Debtor, Scott I. Talle continues alone in the instant bankruptcy petition. The Debtor has been employed for the past 21 years at Bimbo Bakeries as a salesperson. The individual Debtor also was the owner of a real property rental unit which produced no income during the bankruptcy proceedings. A non-judicial foreclosure was initialized against real estate that necessitated Bankruptcy protection. A summary of the real property is listed below:

| Property Address | Classes | Debtor's Intention |
|---|---|---|
| 20516 Rancho Villa Road, Ramona, California 92065 | 1A | Surrender |
| 344 N. Letton Street, Ramona, California 92065 | 1B | Retain |

Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties, to propose a plan of reorganization ("Plan"). The Debtor is the proponent of the Plan dated June 1, 2014. A true copy of the Plan is attached to this Disclosure Statement as Exhibit A.

A.    The Purpose of the Disclosure Statement

The proposed distributions under the plan are discussed at pages 14 to 22 of this disclosure statement.  General unsecured creditors are classified in Class 2B, and will receive a distribution of twenty-five (25%) percent of their allowed claims over sixty (60) months and without interest.

The Purpose of the Disclosure Statement. Pursuant to §1125 of the Code, the Debtor has prepared and filed this Disclosure Statement along with the Plan, for the Court's approval and submission to the holders of claims and interests. However, before an acceptance or rejection of a plan may be solicited, the Court must find that the Disclosure Statement contains "adequate

information."

"Adequate Information" is defined in 11. U.S.C. §1125(a)(1) to mean information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that should enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. _In re Metrocraft Publishing Serve, Inc_., 39 B.R. 567 (Bankr. N.D. Ga. 1984)

READ THIS DISCLOSURE STATEMENT CAREFULLY TO FIND OUT;

(1)    WHO CAN VOTE OR OBJECT,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS, (i.e., if your claim is disputed and what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,

(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,

(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND

(6)    WHETHER THIS PLAN IS FEASIBLE

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and Disclosure Statement, the Plan provisions will govern.

**PART II**
**CONFIRMATION REQUIREMENTS;**
**VOTE REQUIRED FOR APPROVAL OF THE PLAN**

PERSONS OR ENTITIES CONCERNED WITH THE CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

A.    Who May Vote or Object

1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

a.    What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS NOVEMBER 1, 2012. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled in the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the Interest.

b.    <u>What is an Impaired Claim/Interest</u>

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed on the effective date of the Plan.

In this case, the Debtor believes that classes 1B, 2A, 2B and 3 are impaired and that all holders of claims in each of those four classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Debtor's characterization of his claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

3.    <u>Who is Not Entitled to Vote</u>

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code §507(a) (1), (a) (2) and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code §507(a) (1), (a) (2) and (a)(8); are not

- 9 -

entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

4.      Who Can Vote in More than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

5.      Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, or (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in paragraph 7 of this Section.

6.      Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

7.      Treatment of Nonaccepting Classes: Absolute Priority Rule

As noted above, even if all impaired classes do not accept the Proposed Plan, the Court may nevertheless confirm the Plan if the nonaccepting classes are treated in the manner required by the

Code. The process by which nonaccepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not  "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C §1129(b) and applicable case law.

a.    Secured Claims

There are three ways to satisfy the fair and equitable standard with respect to a dissenting class of secured claims. The first way is to provide the class members retain their security interests (whether the collateral is kept or is transferred by the debtor) to the extent of their allowed secured claims and to give each secured creditor in the class deferred cash payments that aggregate to at least the amount of the allowed secured claim and which have a present value equal to the value of the collateral. This method of satisfying the fair and equitable standard may be complicated by the application of 11.U.S.C §1111(b)(2). The meaning of "allowed secured claim" as used in this paragraph will depend whether the secured creditor makes a §1111 (b)(2) election to be treated as fully secured despite the fact that the collateral may be worth less than the amount of the claim.

(1) Section 1111(b)(2) election; The §1111(b)(2) election converts the unsecured deficiency claim into a claim secured by the collateral of the electing creditor. If a creditor so elects, the Debtor must treat the creditor's entire claim as a secured claim and the Plan must provide for the creditor to receive, on account of its claim, payments, either present or deferred, of a principal face amount equal to the amount of the claim and of a present value equal to the value of the collateral.

A second alternative for complying with the fair and equitable standard with respect to a class of dissenting secured creditors is for the plan to provide for the realization of the "indubitable equivalent" of their secured claims.

The third alternative for satisfying the fair and equitable standard is to provide in the plan for the sale of the collateral free and clear of liens, with the liens to attach to the sale proceeds.

b.      Unsecured Claims

There are two ways of satisfying the fair and equitable standard with respect to a dissenting class of unsecured claims. The first way is for the plan to be approved for distributions to the dissenting class worth the full amount of their allowed claims. The allowed claims need not be paid in full on the effective date of the plan. If the plan provides for deferred payments, an appropriate interest rate must be used so that the present value of deferred payments equals the full amount of the allowed unsecured claims of the dissenting class.

The second way to satisfy the fair and equitable test with respect to the dissenting class of unsecured creditors is for the plan to provide that all claims that are junior to the dissenting class do not receive or retain any property on account of their claims or interests. Accordingly, if a dissenting unsecured creditor class is to receive property worth only one-half of its allowed claims, the plan may still be fair and equitable if all junior classes are to receive or retain nothing and if no senior class is to receive more than 100% of its allowed claims.

The Debtor is an individual. Pursuant to Section 1129(a)(15) the Court shall confirm a plan only if the holder of an allowed unsecured claim objects to the confirmation of the plan the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor to be received during the 5-

year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(b)(2)(B)(ii) (2003) (amended 2005). This is commonly known as the absolute priority rule. In individual Chapter 11 cases, the absolute priority rule prevents debtor from receiving or retaining any property under the plan unless claims of the impaired dissenting classes of unsecured creditors are paid in full. There is a split of opinion among courts as to whether the "absolute priority rule" applies to individual chapter 11 plans. In, *In re Lively*, 2013 U.S. App. LEXIS 10839 (5th Cir. May 29, 2013) *In re Stephens*, 704 F.3d 1279 (10th Cir. 2013) and *In re Maharaj*, No. 11-1747 (4th Cir. June 14, 2012), the Courts held that the absolute priority rule applies in individual chapter 11 cases. In, *In Re Friedman*, 466 B.R. 471 (9th Cir. BAP 2012) the Court held that the absolute priority rule does not apply in individual Chapter 11 cases.

The Debtor contends that the Absolute Priority Rule will not be at issue in this Plan because there will be no objecting unsecured creditors.

In the event an unsecured creditor objects to Plan confirmation based upon 11 U.S.C. §1129(b)(2)(B) [the "Absolute Priority Rule"], the Debtor retains the right to make a new value contribution, subject to allowing exclusivity to expire or allowing an auction for the right to control the objecting secured creditor's collateral.

8.    Request for Revaluation of Real Properties

The Debtor's Plan, pursuant to Section 1123(b) of the Bankruptcy Code, provides for the revaluation of the Debtor's real property (with the exception of the primary residence) in accordance with each property's current market value immediately prior to final confirmation of the Plan. If you are a secured creditor, your secured claim may be reduced in accordance with Section 506(a) of the

Bankruptcy Code, as of the effective date of the Plan. If you disagree with the revaluation or the appraised amounts, you should object to the Plan.

## PART III
## DESCRIPTION OF THE PLAN

A.    What Creditors and Interest Holders will Receive Under the Proposed Plan

As required by the Bankruptcy Code, The Plan classifies claims and interests in various classes according to their right to priority. The plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

B.    Unclassified Claims

Certain types of claims are not placed into voting classes, instead they are unclassified. They are not considered impaired and can't vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the proponent has not placed the following claims in a class:

1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case, which are allowed under Code §507(a)(1). The Code requires that all administrative claims be paid on the Effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of Debtor's §507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Law Offices of Andrew H. Griffin, III | $35,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by |

- 14 -

| | | the Court on the effective date of the Plan |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on effective date |
| Office of the U. S. Trustee | $650.00 | Paid in full on effective date |
| Total…………………………………… | $35,650.00 | |

2.       Court Approval of Fees Required

The Court must rule on all fees listed in this chart before the fees will be owed with the exception to the clerk's fees and the U.S. Trustee's fees. The professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay $35,650.00 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, the Debtor will have $20,000.00 on hand on the Effective Date of the Plan. The source of this cash will be from Debtor's personal service income. The reorganized Debtor and his legal counsel will enter into an agreement for payment of administrative claims post-confirmation.

3.       Priority Tax Claims

The Debtor will pay claims entitled to priority under §507(a)(8) in full over time at the non-bankruptcy statutory interest rate in equal amortized payments in accordance with §511.  Payments will be made monthly, due on the first day of the month, starting on the first such date after the Effective Date and ending on the last such date that is no more than 5 years after the entry of the order for relief.  Payment of priority tax claims in full within 5 years of the petition date and on terms not less favorable than those accorded the most favored non-priority creditor is required by §1129(a)(9)(C). Accordingly, if Class 2 General Unsecured Claims votes to reject the Plan and is

paid in full over time, tax priority claimants will receive statutory interest on their claim. This treatment is at least as favorable as that received by Class 2 General Unsecured Claims.

**Priority tax claimants are <u>not</u> entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | 36,000.00 | | $600.00 | 60 |

C.      Classified Claims and Interests

1.      Classes of Secured Claims

Secured Claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under the Plan.

| CLASS #1A | DESCRIPTION | INSIDERS (Yes/No) | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of OneWest Bank (**Indymac Bank**). | | No | No Unimpaired; claims in this class are NOT entitled to vote on the Plan | The plan and disclosure statement does not modify the terms and conditions of the original note. Debtor will surrender the collateral |
| Collateral Description | **20516 Rancho Villa Road, Ramona, CA 92065** | | | |
| Collateral Value | $750,000.00 | | | Not Applicable |
| Priority of Security | First Deed of Trust | | | |
| Principal Owed | $1,436,502.49 | | | |
| Pre-Petition Arrearage Amt | $229,654.83 | | | |
| Post-Petition Arrearage Amount | $0 | | | |
| Total Claim Amount (Claim #6) | $1,436,502.49 | | | Treatment of Lien Surrender and reject. |

Debtor will surrender the above collateral on the Effective Date of the Plan. The confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan. Any secured claim is satisfied in full through surrender of the collateral. Any deficiency claim is a general unsecured claim treated in Section 2B. The Creditor in this class shall retain its interest in the collateral. **This secured claim is not impaired and is not entitled to vote on confirmation of the Plan.**

| CLASS #1B | DESCRIPTION | INSIDERS (Yes/No) | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Wells Fargo Home Mortgage (AKA Wachovia Mortgage)** | | No | Yes Impaired; claims in this class are entitled to vote on the Plan | To be treated as partially secured in the amount of $377,121.82. The unsecured amount of $144,174.82 shall be treated in Class 2B. |
| Collateral Description | **344 N. Letton Street, Ramona, CA 92065** | | | Payment amount $1,910.82 Monthly plus impounds subject to change but currently $203.48 per month. |
| Collateral Value | $377,121.82 (by Stipulation) | | | Begin Date: April 1, 2013 |
| Priority of Security | First Deed of Trust | | | End Date March 1, 2043 |
| Principal Owed | $512,133.59 | | | Balloon (Y/N) N |
| Pre-Petition Arrearage Amount | | | | Interest Rate 4.5% |
| Post-Petition Arrearage Amount | $0 | | | Total Payout $377,174.82 plus annual interest of 4.5% during the life of Plan. |
| Total Claim Amount (Claim #7) | $512,133.59 | | | Treatment of Lien Partially secured and partially unsecured. |

FIFTH AMENDED DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 PLAN DATED JUNE 1, 2014, OF SCOTT I. TALLE

The Debtor has paid the secured creditor in accordance with the following stipulation:

The Debtor and Creditor have entered into the following stipulation:

1.      "Creditor (its successors and assigns) shall have a secured claim in the amount of $377,121.82 to be amortized over 30 years at a fixed interest rate of 4.5% per annum (the "**Secured Claim**").

2.      Creditor shall have an unsecured claim in the amount of $144,174.82 (the "**Unsecured Claim**"). Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issued to general unsecured creditors under Debtors' Chapter 11 Plan, as amended.

3.      Debtors shall tender regular monthly payments of principal and interest to Creditor (and/or its servicer) in the amount of $1,910.82 on the first day of each month for the Secured Claim commencing on April 1, 2013, and continuing on the first day of each month thereafter until March 1, 2043 when all outstanding amounts due under the Secured Claim are to be paid in full.

4.      In addition to the principal and interest payment described in paragraph 3 of this Stipulation, Debtors shall tender to Creditor (and/or its servicer) all necessary escrow payment for any and all real property taxes and/or real property insurance advances as required by Creditor (and/or its servicer) and in accordance with any requirements set forth in the Note and Deed of Trust. Debtors shall tender the necessary escrow payments together with the regular monthly mortgage payments described in paragraph 3 above, commencing on April 1, 2013, and continuing thereafter until March 1, 2043, at which time the Secured Claim and any related escrow charges must be paid in full. Currently, the amount of the monthly escrow payment is $203.48; however, Debtors understand this amount is subject to change.

5.      In the event of any default on any of the provisions of this Stipulation, Creditor shall provide

- 18 -

written notice, via certified mail, to Debtors at the Subject Property and to Debtors' attorneys of record, provided the Debtors' bankruptcy remains active. If Debtors fail to cure the default or payment default with certified funds after passage of thirty (30) calendar days from the date said written notice is place in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate, unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property, including unlawful detainer, without further notice, order, or proceeding of this Court.

6.      The acceptance by Creditor (and/or its servicer) of a late or partial payment shall not act as a waiver of Creditor's right to proceed hereunder.

7.      Except as otherwise expressly provided herein, all remaining terms of the Note and Need of Trust, which are incorporated herein by reference, shall govern the treatment of Creditor's Secured Claim.

8.      In the event that Creditor is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

9.      In the event the Debtors default under this Stipulation and Creditor (and/or its servicer) forwards a 30-day default letter to Debtors, Debtors shall also be required to tender to Creditor (and/or its servicer) its reasonable attorneys' fees and costs incurred for each default letter submitted, in addition to said described default amount stated therein, in order to cure the default. Any notice of default that Creditor (and/or its servicer) provides Debtors and/or Debtors' attorneys pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C §1692.

10.    At the request of the Creditor (and/or its servicer), Debtors shall execute such document as required by Creditor (and/or its servicer) to reflect the Debtors as the borrower of the Secured Claim, and to modify the terms of the Loan obligation to conform to the provisions of this Stipulation as Creditor (and/or it servicer) deems necessary.

11.    In the event the Debtors seek to sell the Subject Property at anytime prior to receiving their Chapter 11 discharge, Creditor (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless its receives proceeds from the sale of the Subject Property in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of trust, less any payments made and received by Creditor (and/or its servicer) to such date. If the proposed sale of the Subject Property is for less than the unmodified, outstanding balance owing under the Note and Deed of trust, then Creditors' consent must be obtained in writing prior to any such sale. In the event the Debtors seek to sell the Subject Property after receiving their Chapter 11 discharge, the foregoing requirements of this paragraph 11 no longer apply; however, in no event shall the sale of the Subject Property be for less than Creditor's Secured Claim, less any payments made and received by Creditor (and/or it servicer) to such date.

12.    The terms of this Stipulation may not be modified, altered, or changed by the Debtors' Chapter 11 Plan; any subsequently filed amended or modified Chapter 11 Plan of Reorganization or any other on the foregoing without the express written consent of the Creditor. The above terms of this stipulation shall be incorporated into the Debtors' Chapter 11 Plan and/or any subsequently filed amended or modified Chapter 11 Plan and confirmation order thereon. In the event of a conflict between the terms or provisions of this Stipulation and Debtors' Chapter 11 Plan or any amendments or modifications thereto, the terms of this Stipulation shall control.

13.    In the event Debtors' case is dismissed or converted to any other chapter under Title 11 of

the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Note and the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

14.     In exchange for the foregoing, this Stipulation shall constitute a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization, as amended, for the Secured Claim and the Unsecured Claim" [Filed with the Court on April 23, 2013 as docket number 74].

| CLASS #1C | DESCRIPTION | INSIDERS (Yes/No) | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|---|
| Secured Claim of **Toyota Motor Credit Corporation (TMCC)** | | No | No | The plan and disclosure statement does not modify the terms and conditions of the original note Debtor will surrender collateral. |
| Collateral Description | **2008 Toyota Tundra** | | | Payment amount $0 |
| Collateral Value | $20,853.00 | | | |
| Priority of Security | Vehicle Loan | | | |
| Principal Owed | $17,103.53 | | | |
| Pre-Petition Arrearage Amount | (None) | | | |
| Post-Petition Arrearage Amount | $0 | | | Total Payout $0 |
| Total Claim Amount (Claim #2-1) | $17,103.53 | | | Surrender and reject. |

Debtor will surrender the above collateral on the Effective Date of the Plan.  The secured creditor obtained relief from stay in a hearing held February 27, 2014. If an order has not been entered the confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan.  Any secured claim is satisfied in full through surrender of the collateral.  Any deficiency

- 21 -

claim is a general unsecured claim treated in Section 4.  The Creditors in this class shall retain its interest in the collateral.  **This secured claim is not impaired and is <u>not</u> entitled to vote on confirmation of the Plan.**

2.      Class of General Unsecured Claims

**Class 2A.  Small Claims Convenience Class.**

| Name of Creditor | Amount of Claim | Amount to be Paid | (%) to be Paid |
|---|---|---|---|
| City of San Diego | $103.00 | $25.75 | 25% |
| Credit Management LP | $688.00 | $172.00 | 25% |
| Total | $791.00 | $197.75 | 25% |

This class includes any creditor whose allowed claim is One Thousand dollars [$1,000.00] or less, and any creditor in Class 2B whose allowed claim is larger than One Thousand dollars [$1,000.00] but agrees to reduce its claim to One Thousand dollars [$1,000.00].  Each creditor will receive on the Effective Date of the Plan a single payment equal to lesser of 25% of its allowed claim.

The creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan.  **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

**Class 2B General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). The following chart identifies the Plan's treatment of the class containing all of Debtor's general unsecured claims.

| CLASS #2B<br>General Unsecured Claim<br>DESCRIPTION | Claim Amount | IMPAIRED<br>(Yes/No)<br>Impaired; claims<br>in this class are<br>entitled to vote<br>on the Plan | TREATMENT<br>Payment Interval<br>**Quarterly** |
|---|---|---|---|
| American Express Bank FSB<br>(Claim No. 1) | $56,869.86 | Yes | $710.87 Quarterly<br>Total Payout<br>$14,217.47 |
| LVN Funding, LLC assignee<br>of Chase, Resurgent Capital<br>Services (Claim No. 4) | $8,155.34 | Yes | $101.94 Quarterly<br>Total Payout<br>$2,038.84 |
| PYOD, LLC assignee of B-<br>Line, LLC, Resurgent Capital<br>Services (Claim No. 5) | $16,538.83 | Yes | $206.74 Quarterly<br>Total Payout<br>$4,134.71 |
| Alliance One Receivable | $1,257.00 | Yes | $15.71 Quarterly<br>Total Payout $314.25 |
| Expo/CBNA. | $8,998.00 | Yes | $112.48 Quarterly<br>Total Payout<br>$2,249.50 |
| Receivables Performance | $1,132.00 | Yes | $14.15 Quarterly<br>Total Payout $283.00 |
| Verizon Wireless | $1,641.00 | Yes | $20.51 Quarterly<br>Total Payout $410.25 |
| Well Fargo Bank<br>(Unsecured Claim of 1B) | $144,174.82 | Yes | $1,802.19Quarterly<br>Total Payout<br>$36,043.71 |

Total Amount of Allowed Unsecured Claims $238,766.85

Estimated Payment
$3,000.00 Amount/Quarterly

Balloon (Yes/No) No

Begin Date: Two weeks after
Plan Confirmation

End Date: September 2019

Total payout $60,000.00

Total Payout 25%

- 23 -

3.      Classes of Interest Holders

The Debtor is an individual. The Debtor is the interest holder.  Debtor's interest will not be impaired.  Debtor will retain ownership interest subject to the terms of the Plan.

D.      Other Provisions of the Plan

1.      Effective Date of the Plan

The Effective Date of the Plan is 14 days after the date of the entry of the order confirming the Plan, or such other date, as may be fixed in the order confirming the Plan. The Debtor expects the Effective Date of the Plan to be in October, 2014.

2.      Executory Contracts and Unexpired Leases

a.      Assumptions

Debtor currently holds no active leases on any of the real property.

b.      Rejections

There is no Executory Contract with the Debtor that is rejected. If any exists, a proof of claim for any damages resulting from such rejection shall be filed within thirty (30) days after the Effective Date of the Plan. Such claim shall be deemed allowed unless, within thirty (30) days of service of a copy of the proof of claim upon the Reorganized Debtor and its counsel, and objection is filed. The objection shall be determined by the Court as a contested matter under Federal Rule of Bankruptcy Procedure 9014. Any such Claim shall be added to Class 2B and treated as provided in Section 5.04 of the Plan.

The Debtor is not aware of any other unexpired leases or executory contracts. If any should be found to exist, the Reorganized Debtor reserves the right to assume or reject it. Any such assumption or rejection shall be in accordance with the provisions of Section 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6006. A proof of claim for damages resulting from

a rejection shall be filed within thirty (30) days after entry of an order of the Court approving the rejection. Such claim shall be allowed unless, within thirty days of service of a copy of the proof of claim upon the Reorganized Debtor and its counsel, an objection is filed. Each objection shall be determined by the Court as a contested matter under Federal Rule of Bankruptcy Procedure 9014. Any such claim shall be added to Class 2B and treated as provided in Section 5.04 of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE OF THE PLAN. Any claim based on the rejection of contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

## PART IV
## MEANS OF EFFECTUATING THE PLAN

A.  Funding for the Plan.

The funding of the plan will come from income from personal services.  The Debtor has not been able to lease the real property of the estate. As a result, he has chosen to surrender the residence. The Debtor expects his net income to grow significantly, for two reasons: 1) The Debtor has stipulated with the Secured Creditor to a cramdown on the Letton Street property.  Pursuant to the stipulation, the principal and interest on the secured claim is reduced to $1,910.82. per month plus escrow of $203.48 and the interest rate was reduced to 4.25% fixed amortized over thirty (30) years.  There is no equity in the Rancho Villa Road property and it will be surrendered and Debtor will reside in the Letton Street Property.  The Debtor has surrendered the 2008 Toyota Tundra. The surrender of the vehicle saves $402.06 per month for the loan. Accordingly, the Debtor saves on the insurance, maintenance and fuel. The Debtor's net income of $7,637.00 is sufficient to pay for the secured lien on the Letton Street property. By the time of Plan confirmation, or within 90 days thereafter, Debtor expects to have sufficient funds on hand to pay all Post Petition Administrative

claims in full.

Real property will not be sold to fund the Plan.  The Plan will be funded from personal service income.  The Plan proposes to pay $3,000.00 each quarter.  As Debtor's financial projections demonstrate, the Debtor will have an average cash flow, after paying operating expenses and post-confirmation taxes, of $16,641.00 each quarterly for the life of the Plan. The monthly amount of $23.00 will be used for contingencies for Debtor's living expenses.

B.  Disbursing Agent.

The Debtor shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan.

## PART V
## CASH REQUIREMENTS

On the Effective Date of the Plan, the Debtor will need approximately $15,650.00 to pay administrative expenses.

## PART VI
## ADMINISTRATIVE EXPENSES

Administrative expenses are defined in §507(a)(1) of the Code. They include the Debtor's post-petition operating expenses, which are unpaid on the Effective Date of the Plan. These post-petition expenses will be assumed and paid by the reorganized Debtor. Administrative expenses also include the Court approved fees and costs of professional persons. In this case, the Court has approved the employment of Attorney, Andrew H. Griffin, III, who will be paid pursuant to Court Order.  The court has also approved the employment of an appraiser, which has been paid pursuant to Court Order.

Other than ordinary course of business expenses, the Debtor believes that Administrative Claims consist of the professional fees of Debtor's Professionals. Under the plan, unless otherwise

agreed to by the parties, each holder of an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Administrative Claim; provided, however, that Administrative Claims that represent liabilities incurred by Debtor in the ordinary course of its business during the Bankruptcy Case will be paid in the ordinary course of its business and in accordance with any terms and conditions of any agreements relating thereto.

## PART VII
## LEGAL PROCEEDINGS

No proceedings to avoid liens are pending or anticipated, except the Parties in interest may file objections to disputed claims after Plan Confirmation. Nevertheless, Debtor does not anticipate becoming involved in any litigation after Plan confirmation that would materially affect Debtor's reorganization.

## PART VIII
## DESCRIPTION OF THE DEBTOR

A.  Description and History of the Debtors' Business.

The Debtor is an individual, earning W-2 wages working at Bimbo Bakeries. The Debtor and former Co-Debtor are married but are living separately and apart from each other. Jody A. Talle does not contribute financially to the Debtor or to support the four minor children who reside with the Debtor.

B.  Principals/Affiliates of Debtor's Business.

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor has only been, the Debtor. The Managers of the Debtors during the Debtors' Chapter 11 case have only been the Debtor and former Co-Debtor.

## PART IX
## REASONS FOR FINANCIAL DIFFICULTIES AND CORRECTIONS OF THOSE FACTORS

A.  Reasons for Financial Difficulties

The Debtor's former tenants in the Letton Street property had not paid rent since 2010.  The Debtor was not able to evict tenants until August, 2012. The failure to receive rent exacted a toll on the estate, resulting in defaults on the Notes and the Notice of Trustee Sales.

B.  Reason for the Chapter 11 Filing

The Bankruptcy Petition was filed to stop the Trustee sale of the estate's real property.

C.  Correction of These Factors

Debtor surrendered the residence that has no equity, a mortgage in the amount of $1,436,502.49 and prepetition arrears in the amount of $229,654.83. The Debtor will no longer be subject to a tenant who fails to pay rent because he has moved into the Letton Street property which was the rental unit. The Debtor surrendered the 2008 Toyota Tundra and will no longer be subject to pay the loan, insurance, maintenance and fuel for this vehicle.

## PART X
## ASSETS AND VALUATION

Debtor's assets are listed below.  The values of the real property shown are supported by a certified appraiser.  Each appraisal has been filed with the Court.

**Real Property**

**A. 344 N. Letton Street, Ramona, California 92065, County of San Diego**

Description of Property:  The property is a single family, which consists of a 2,096 square foot, 3 bedroom, 2 bathroom, 3 car garage and pool.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| NONE Debtor will reside therein | Reduced from $2,400.00 per month to $1,910.82 1st – Wells Fargo Bank, N.A. | Included | Included | $406.33 | -0- |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| $377,121.82 (by stipulation) | $512,133.59 [$144,174.82 Unsecured] | No | Yes, by Debtor | None | No |

### B. 20516 Rancho Villa Road, Ramona, California 92065, County of San Diego

Description of Property: The property was Debtor's previous primary residence that consists of a 8,226 square foot, 5 bedrooms, 6 bathrooms, single family residence with 8 car garage.

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $-0- | $8,055.33 per month 1st – OneWest Bank | Impounded | Impounded | $320.00 | -0- |

| Appraised Value | Liens | Balloon Payment | Occupied | Rents Current | Taxes Delinquent |
|---|---|---|---|---|---|
| $750,000.00 | $1,436,502.49 | No | No | None | No |

**There is no Monthly Income received from any of the Debtor's Real Property.**

Total Value of all Real Property: $1,127,121.82. The values shown are based upon the appraisals by a certified appraiser who has been employed by Debtor.

### Personal Property

| Description of Property | Values | Liabilities |
|---|---|---|
| 2008 Toyota Tundra | $20,853.00 | $17,103.53 |
| 1997 BMW 328i (129,000 miles) not operational engine blown at mechanics shop | $4,875.00 | -0- |
| 2003 Ford Excursion (140,000 miles) | $12,175.00 | -0- |
| 1999 Dodge Avenger | $200.00 | -0- |

- 29 -

| | | |
|---|---|---|
| (80,000 miles) salvage title | | |
| 2001 Ragen 24c Trailer Toy Hauler | $7,000.00 | -0- |
| 2008 Heavy equipment trailer | $1,000.00 | -0- |
| 2007 Kawasaki Motorcycle KFX 400cc Quad | $2,000.00 | -0- |
| 1987 Kawasaki Quad Tecate 250 | $500.00 | -0- |
| 1986 Tecate 3 Kawasaki (3 wheeler not running) | $200.00 | -0- |
| Three (Kawasaki FFX 80) Quads (1) 2001, (2) 2006 | $2,250.00 | -0- |
| 1985 Honda 3 wheeler 250R (not running) | $500.00 | -0- |
| 1979 Electric Golf Cart Yamaha G1 (Not running) | $50.00 | -0- |
| 1980 Yamaha Motorcycle | $300.00 | -0- |
| Gym equipment | $3,000.00 | -0- |
| 1999 Mitsubishi FE210 | $3,600.00 | -0- |
| Bobcat T-190 | $20,000.00 | -0- |

# PART XI
# LIABILITIES

Debtor's liabilities are listed below. Debtor's total secured liabilities $1,965,739.61

| CLASS #1 Secured Claim DESCRIPTION | Claim Amount |
|---|---|
| OneWest Bank (1A) | $1,436,502.49 |
| Wells Fargo Home Mortgage (1B) | $512,133.59 |
| Toyota Motor Credit | $17,103.53 |

**Class 2A. Small Claims Convenience Class.**

| Name of Creditor | Amount of Claim |
|---|---|
| City of San Diego | $103.00 |
| Credit Management LP | $688.00 |
| Total | $791.00 |

| CLASS #2B General Unsecured Claim DESCRIPTION | Claim Amount |
|---|---|
| American Express Bank FSB (Claim No. 1) | $56,869.86 |
| LVN Funding, LLC assignee of Chase, Resurgent Capital Services (Claim No. 4) | $8,155.34 |
| PYOD, LLC assignee of B-Line, LLC, Resurgent Capital Services (Claim No. 5) | $16,538.83 |
| Alliance One Receivable | $1,257.00 |
| Expo/CBNA | $8,998.00 |
| Receivables Performance | $1,132.00 |
| Verizon Wireless | $1,641.00 |
| Well Fargo Bank (Unsecured Claim of 1B) | $144,174.82 |

Total Amount of Class 2B Unsecured Liabilities $238,766.85

## PART XII
## HISTORICAL AND CURRENT FINANCIAL INFORMATION

The Debtor has been employed for over twenty-one years at Bimbo Bakeries. The former Co-Debtor's previous business "Jody's Delivery Service" is non-operational due to equipment malfunctions. The Debtor owned a rental unit located at 344 N. Letton Street in Ramona that has not produced rental income for two years prior to the petition due to delinquent tenants.

The Debtor has filed monthly operating reports with the court, which shows a net average income of $7,637.00. A projection of future income is attached as Exhibit B. The source of the income for this plan is solely the income received from Bimbo Bakeries.

The Debtor, who resides with four (4) minor children, is living separate and apart from Jody A. Talle who is not providing financial support.

## PART XIII
## LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test." Which requires a liquidation analysis. Under the Best Interest Test if a claimant or interest holder is in an impaired class and the claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must

receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a Chapter 7 Trustee usually sells the Debtor's assets. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remain sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holder should receive under a Chapter 7 Liquidation. The Plan Proponent maintains that this requirement is met here for the following reason – The unsecured creditors would receive no distribution if all the assets were liquidated. All the real property has secured liens that exceed the value of the real property.

Below is a demonstration, in balance sheet format, that all creditors and interests will receive at least as much under that Plan as such creditor or interest holder would receive under Chapter 7 liquidation.)

### ASSETS VALUED AT LIQUIDATION VALUE

| CURRENT ASSETS | | |
|---|---|---|
| a. Cash on hand | $2,385.60 | |
| b. Accounts receivable | $0 | |
| c. Inventories | $0 | |
| TOTAL CURRENT ASSETS | $2,385.60 | |
| FIXED ASSETS | Values | Liabilities |
| d. Office furniture & equipment | $1,500.00 | $0 |
| e. Machinery & Equipment | $3,000.00 | $0 |
| f. Automobiles 2008 Toyota Tundra | $20,853.00 | $17,103.53 |

| | | |
|---|---|---|
| 1997 BMW 328i (129,000 miles) not operational engine blown at mechanics shop | $4,875.00 | |
| 2003 Ford Excursion (140,000 miles) | $12,175.00 | $0 |
| 1999 Dodge Avenger (80,000 miles) salvage title | $200.00 | $0 |
| 2001 Ragen 24c Trailer Toy Hauler | $7,000.00 | $0 |
| 2008 Heavy equipment trailer | $1,000.00 | $0 |
| 2007 Kawasaki Motorcycle KFX 400cc Quad | $2,000.00 | $0 |
| 1987 Kawasaki Quad Tecate 250 | $500.00 | $0 |
| 1986 Tecate 3 Kawasaki (3 wheeler not running) | $200.00 | $0 |
| Three (Kawasaki FFX 80) Quads (1) 2001, (2) 2006 | $2,250.00 | $0 |
| 1985 Honda 3 wheeler 250R (not running) | $500.00 | $0 |
| 1979 Electric Golf Cart Yamaha G1 (Not running) | $50.00 | $0 |
| 1980 Yamaha Motorcycle | $300.00 | $0 |
| Gym equipment | $3,000.00 | $0 |
| 1999 Mitsubishi FE210 | $3,600.00 | $0 |
| Bobcat T-190 | $20,000.00 | $0 |
| g. Building and Land 20516 Rancho Villa Road, Ramona, California | $750,000.00 | $1,409,617.26 |
| 344 N. Letton Street, San Diego, California | $340,000.00 | $512,133.54 |
| **TOTAL FIXED ASSETS** | **$1,171,303.00** | **$1,754,705.79** |
| **OTHER ASSETS** | | |
| h. Customer List | $0 | |
| i. Stocks, bonds, financial assets | $0 | |
| j. Lawsuits or other claims against Third parties | $0 | |
| k. Other intangibles (e.g. avoiding powers) | $0 | |
| **TOTAL OTHER ASSETS** | $0 | |
| | **TOTAL CURRENT ASSETS** | $2,385.60 |
| | **TOTAL FIXED ASSETS** | $1,171,303.00 |
| | **TOTAL OTHER ASSETS:** | $0 |

- 33 -

| | **TOTAL ASSETS AT LIQUIDATION VALUE** | $1,148,936.67 |
|---|---|---|
| | Less: Secured creditor's recovery[1] | $1,090,000.00 |
| Chapter 7 Trustee would abandon these assets since they are over encumbered. | Less: Chapter 7 Trustee Fees and expenses. Debtor believes that Chapter 7 Trustee would abandon the real estate because it is over encumbered. $61,024.87 | |
| | 25% of first $5,000.00 = | $1,250.00 |
| | 10% over $5,000.00 but less than $50,000.00 = | $4,500.00 |
| | 5% of any amount over $50,000.00 but let than $1 Million = | $551.22 |
| | 3% on any amount over $1 Million = | $0 |
| | Total | $6,301.22 |
| | Less: Chapter 11 administrative expenses | $650.00 |
| | Less: Priority Claims, excluding administrative expense claims | $8,318.52 |
| | Less: Debtor's claimed exemptions | $25,050.00 |
| | Balance for unsecured claims | $0 |
| | Total amount of unsecured claims | $239,517.85 |

PERCENT OF THEIR CLAIMS, WHICH UNSECURED CREDITOR WOULD RECEIVE, OR RETAIN IN A CHAPER 7 LIQUIDATION [2]: ZERO (0%)

PERCENT OF THEIR CLAIMS, WHICH UNSECURED CREDITORS, WILL RECEIVE OR RETAIN UNDER THIS PLAN: 25%                  $60,000.00

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 - Secured Claims | 100% | 65% |

---

[1] Note: The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

[2] Note: if this percentage is greater that the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless proponent obtains acceptance by every creditor in an impaired class.

| | | |
|---|---|---|
| Class 2 - General Unsecured Class | 25% | 0% |
| Class 3 - Interest Holders | 100% | 0% |

## PART XIV
## FEASIBILITY

Another requirement for confirmation involves the feasibility of the plan, which means that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective date              $20,000.00

To Pay: Administrative claims                                            $650.00

To Pay: Statutory costs and charges                                  $0.00

To Pay: Other Plan payments due on Effective date          $1,000.00

Balance after paying these amounts                                 $18,350.00

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $14,834.37 | Cash in DIP Account currently |
| $5,165.63 | Additional cash DIP will accumulate from Net earnings between now and Effective Date. |
| +-0- | Borrowing |
| +-0- | Capital Contributions |
| +-0- | Other |

| $20,000.00 | Total |
|------------|-------|

The second aspect of feasibility considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent has provided financial statements, which include both historical and projected financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay $3,000.00 each quarter. The final Plan payment is expected to be paid on September 2019. The Plan Proponent contends that Debtor's financial projections are feasible. As shown by Debtor's historical financial statements, Debtor's average monthly cash flow, after paying operating expenses and post-confirmation taxes, in the three years preceding the filing of this bankruptcy case is sufficient to make the plan payment. Furthermore, as discussed earlier in the Disclosure Statement. The U.S. Trustee will be paid before any other administrative expense is paid.

## PART XV
## FINANCIAL PROJECTIONS

The income stated in the Disclosure Statement based upon the current and actual, salary received which depicts operations following the Effective Date for three months.  The financial projections are made utilizing the historical information as reflected in the operating reports filed with the Court.  The assumptions made in formulating the projections, such as expected income for services. The accounting method used to produce any financial information given is the cash basis. The source of the information contained in the Disclosure Statement is from the Debtor.

## PART XVI
## MARKETING EFFORTS

The real property was not marketed since the real property was over encumbered and a sale would not realize any proceeds to the Estate.

## PART XVII
## POST-PETITION EVENTS

The major events, which affected the case were:

A. Employment of Andrew H. Griffin, III, Attorney for Debtors;

B. Employment of Appraiser.

C. The Negotiations between the parties resulted in reduction of principal, reduced interest rates or arrears, which significantly caused the increase of monthly cash flow.

D. Relief from the Automatic Stay granted in favor of OneWest Bank on real estate located at 20516 Rancho Villa Road, Ramona, CA 92065, on May 30, 2013 (Docket No. 83).

E. Relief from stay granted in favor of Toyota Motor Credit in the personal property 2008 Toyota Tundra (Docket No. 146).

F. The Internal Revenue Service filed a claim in the amount of $60,000.00 (claim no. 3). The Debtor objected to the claim and the IRS amended the claim to $36,000.00.

G. The Court dismissed the Co-Debtor, Jody A. Talle from the Bankruptcy Petition.

## PART XVIII
## MANAGEMENT COMPENSATION

There are no managers, insiders or otherwise, employed by the Debtor. The Debtor is living on proceeds of the estate.

## PART XIX
## INSIDER AND AFFILIATE CLAIMS

The only insider is the Debtor who will pay himself the amount of $5,547.00 each month for living expenses.

## PART XX
## UNITED STATES TRUSTEE SYSTEM FUND FEES

A fee is required by the provisions of the Title 28 United States Code §1930 (a)(6), to be paid quarterly to the United States Trustee by Debtor in a Chapter 11 case. The amount of fee is based on the Debtor's disbursements for the preceding quarter. The Debtor's obligation to pay the fee continues after plan confirmation and until the Chapter 11 case is fully administered and closed. On the effective Date of the Plan, the Debtor shall be current with all quarterly fees due as of that date. Any delinquent fees will be paid in full. Quarterly fees will be paid every calendar quarter thereafter as a first priority under the Plan until the case is closed.

The fee for the quarter ending with the Effective Date of the Plan will be paid on the Effective Date of the Plan. Thereafter, quarterly fees will be paid until the case is closed. As stated in Section XIV of the plan, Debtor expects the case to be closed when payments to the creditor have commenced (about 30 days after the effective Date of the Plan), or after claim objection, if any, have been resolved.

## PART XXI
## TAX ANALYSIS

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained

below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules, which make it difficult to state completely, and accurately all the tax implications in any action.

A.    Tax Impact on the Debtor

Scope and Limitations.  Under the Internal Revenue Code of 1986, as amended (the "Tax Code"), there may be significant federal and state income tax issues for the Reorganized Debtor arising under the Plan described in this Disclosure Statement.  It is not practical to present a detailed explanation of all of the possible federal income tax ramifications of the Plan.  The following is only a summary discussion of certain of the significant consequences, which may affect claimants.  This summary is based upon laws, regulations, rulings, and decisions now in effect and proposed regulations, all of which are subject to change (possibly with retroactive effect) by legislation administrative action, or judicial decision.

The surrender of the family residence located at 20516 Rancho Villa Road, Ramona, CA will have no tax consequences to the Debtor. The Debtor has received no other loans other than the loan to construct the premises and final permanent loan. There has been no refinancing of the property. The value of the real property is significantly lower than the amount of the loan. There would be no affect on the feasibility of the plan.

Under present law, there is uncertainty surrounding the below discussion.  For such reason or otherwise, the tax consequences of certain aspects of transactions involving the Debtor or the Plan may be subject to administrative or judicial interpretations that differ from the discussion below. Further, this summary does not discuss all aspects of the Tax Code or of federal, state or local taxation that may be relevant to a particular claimant.  The federal income tax consequences to any particular claimant may be affected by special considerations not discussed below, the transactions

- 39 -

contemplated in the Plan may have significant state and local tax consequences, which are not discussed herein.  Neither a ruling from the Internal Revenue Service (the "IRS") nor an opinion of counsel has been requested with respect to the federal income tax consequences of the Plan.

ACCORDINGLY, ALL CLAIMANTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE AND LOCAL-TAX-CONSEQUENCES OF THE PLAN ON THEIR CLAIM(S), NEITHER THE DEBTOR, NOR IT'S COUNSEL MAKES ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CLAIMANT.  THE DEBTOR AND ITS COUNSEL IS NOT RENDERING ANY FORM OF LEGAL OPINION AS TO ANY TAX CONSEQUENCES.

### PART XXII
### RISKS TO CREDITORS UNDER THE PLAN

Creditors will be paid under the Plan from future earnings. The proposed Plan has the following risks which may impede the Debtor's ability to perform under the Plan or that would otherwise cause the Debtor to fail to meet the Plan's requirements.

A. Risks of Future Income

No assurances can be given as to the future income.  No assurances can be given as to when, if ever, there will personal services income that result in the proceeds under the Plan.

B. Liquidation of Claims

As of the date hereof, there is no claim that is pending liquidation.  There can be no assurance that any future liquidation outcome will be favorable to the estate.  As a result, assets may be diminished by litigating such claims, thereby reducing such funds available for distribution to Holders of Allowed Claims.

Additionally, if the aggregate amount of Allowed Claims in any Class exceeds Debtor's

present estimate of such Allowed Claims, the recovery obtained by holders of Allowed Claims in such Class will be adversely affected.

## PART XXIII
## DEFAULT PROVISIONS

The following are Events of Default under the Plan:

Notwithstanding any contrary provision in the Disclosure Statement, any pleading or other document filed in this case, or any other document, contract or agreement, and except as provided for, should the Debtor fail in any material respect to timely perform its duties and commitments under the Plan, including, but not limited to, making the payments to holders of claims called for in the Plan, any party in interest adversely affected by such failure must give the Debtor and Debtor's counsel notice, in writing, and filed with the Court of such failure to perform (a "Notice of Default"). If such default is not cured within fourteen days, of the date of notice the adversely affected party may file a motion with the Court to determine what relief may be appropriate because of such default, including but not limited to the entry of an order to timely perform under the Plan, dismissal of the case, or conversion of the case to one under Chapter 7; provided, however that if a final decree closing this case has been entered by the Court, the adversely affected party may seek relief in state court. The triggering event of default under the Plan shall be the filing of a written notice of default with the Bankruptcy Court.

A.  Post-Confirmation Conversion/Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, than all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the

extent that relief from stay was not previously authorized by the Court during this case.

B.  Revocation of the Order Confirming the Plan.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation with 180 days after the entry of the order of confirmation.

## PART XXIV
## EFFECT OF CONFIRMATION OF PLAN

A.  Discharge

This Plan provides that upon payment in full of proposed plan payments to the creditors, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11. U.S.C.§ 1141. However, the discharge will not discharge any liability imposed by the Plan. The Debtor will not be discharged from any debt excepted from discharge under §523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B.  Revesting of Property in the Debtor

Except as provided in Section elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

C.  Modification of the Plan

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

D.  Post-Confirmation Quarterly Reports

Plan Proponent shall file ongoing quarterly reports with the Court in compliance with United States Trustee reporting requirements and guidelines. The quarterly reports shall be served on the Untied States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.

E.  Final Decree

Once the estate has been fully administered as referred to in the Federal Rule Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Court shall designate in the plan Confirmation order, shall file a motion with the Court to obtain a final decree to close the case.

F.  Retained Bankruptcy Court Jurisdiction

The jurisdiction of the Court shall continue after the Effective Date of the Plan, whether or not the case is closed with respect to the following:

1.  Determination of the allowability of disputed claims, together with the claims of Debtor for affirmative relief;

2.  Assumption or rejection of unexpired leases and executory contracts, and determination of disputed claims arising out of rejections;

3.  Determination of any tax liability under Bankruptcy Code §505;

4.  Determination of requests for payment of claims entitled to priority under Bankruptcy Code §507(a)(1);

5.  Resolution of any disputes regarding interpretation of the Plan; and

6.  Implementation or modification of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation appropriate orders to protect the Reorganized Debtor from creditors' actions.

- 43 -

# PART XXV
# DISCLAIMER

The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

The Court's approval of the Disclosure Statement does not warrant the accuracy in the information contained therein, or, that the requirements of 11 U.S.C. §1125 have been met.

Dated: June 1, 2014                          /s/ Scott I. Talle
                                             Scott I. Talle, Debtor/Plan Proponent


Submitted by:                    **Law Offices of Andrew H. Griffin, III**

                                  /s/ Andrew H. Griffin, III
                                 Andrew H. Griffin, III, Esq.
                                 Attorney for Debtor/Plan Proponent,
                                 Scott I. Talle

# Exhibit "A"

Andrew H. Griffin, III, (State Bar Number 108378)
Law Offices of **ANDREW H. GRIFFIN, III**
275 E. Douglas Avenue, Suite 112
El Cajon, CA 92020-4547
(619) 440-5000 Telephone
(619) 440-5991 Facsimile

Attorney for Debtor in Possession,
Scott I. Talle

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In Re:                                                    Case No.: 12-11243-LT11

Scott I. Talle,                                           **SCOTT I. TALLE'S CHAPTER 11
                                                          PLAN OF REORGANIZATION,**
                  Debtor in Possession.                   **DATED JUNE 1, 2014**

## I
## INTRODUCTION

Scott I. Talle and Jody A. Talle are the Debtors in a Chapter 11 bankruptcy case. On August 14, 2012, Debtors filed a voluntary petition under Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §101 et seq. On April 25, 2014, the Court dismissed Co-Debtor Jody A. Talle from the Bankruptcy Petition. This document is the Chapter 11 Plan ("Plan") proposed by Scott I. Talle ("Plan Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

This is a reorganizing plan. In other words, the Proponent seeks to accomplish payments under the Plan by reorganizing and renegotiating the claims of creditors. The Effective Date of the proposed Plan is fourteen days after the confirmation of the plan.

Scott I. Talle, Debtor in Possession in this Chapter 11 case ("Debtor"), proposes the following Plan of Reorganization Dated June 1, 2014:

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Scott I. Talle (the "Debtor") from Personal Services income. This Plan provides for 3 classes of Secured claims, 2 classes of Unsecured claims and 1 class of Equity Security Holders. The plan provides for the payment of secured claims. Any secured creditor who accepts the collateral securing the claim accepts the collateral in full satisfaction of creditor's claim.

The Plan provides for the payment of unsecured creditors holding allowed claims that will receive distributions. This Plan provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.        Secured Claims

Class 1A

This class is comprised of the Secured Claim of OneWest Bank. (The "First Secured Claim") which is asserted as a secured claim against the Debtor's real property located at 20516 Rancho

Villa Road, Ramona, California, reflected by a first deed of trust in the approximate amount of $1,436,502.49. [Reflected on claims register as Claim Number 6]

Class 1B

This class is comprised of the Secured Claim of Wells Fargo Home Mortgage (The "First Secured Claim") which is asserted as a secured claim against the single-family real property located at 344 N. Letton Drive, Ramona, California, reflected by a first deed of trust in the approximate amount of $512,133.59. [Reflected on claims register as Claim Number 7]

Class 1C

This class is comprised of the Secured Claim of Toyota Motor Credit. (The "Secured Claim") which is asserted as a secured claim against the vehicle 2008 Toyota Tundra, in the approximate amount of $17,103.53. [Reflected on claims register as Claim Number 2-1]

2.02   Class 2.        General Unsecured Creditors

**Class 2A Small Claims Convenience Class**

This class includes any creditor whose allowed claim is One Thousand dollars [$1,000.00] or less, and any creditor in Class 2B whose allowed claim is larger than One Thousand dollars [$1,000.00] but agrees to reduce its claim to One Thousand dollars [$1,000.00].  Each creditor will receive on the Effective Date of the Plan a single payment equal to lesser of 25% of its allowed claim.

The creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan.  **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

| Name of Creditor | Amount of Claim |
|---|---|
| City of San Diego | $103.00 |
| Credit Management LP | $688.00 |
| Total | $791.00 |

<u>Class 2B.</u>        General Unsecured Creditors

This class is comprised of all unsecured claim holders against either Debtor including the above classes whose under secured portion of their claims are not secured by any assets of the Debtor. The following is a list of allowed general Unsecured Claims that currently exist in the plan.

| CLASS #2B<br>General Unsecured Claim<br>DESCRIPTION | Claim Amount |
|---|---|
| American Express Bank FSB (Claim No. 1) | $56,869.86 |
| LVN Funding, LLC assignee of Chase, Resurgent Capital Services (Claim No. 4) | $8,155.34 |
| PYOD, LLC assignee of B-Line, LLC, Resurgent Capital Services (Claim No. 5) | $16,538.83 |
| Alliance One Receivable | $1,257.00 |
| Expo/CBNA. | $8,998.00 |
| Receivables Performance | $1,132.00 |
| Verizon Wireless | $1,641.00 |
| Well Fargo Bank (Unsecured Claim of 1B) | $144,174.82 |

Total Amount of Class 2B General Unsecured Liabilities $238,766.85.

2.03    <u>Class 3.</u>        The interests of the individual Debtor in property of the estate.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims.</u>  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims.</u>  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in

Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

### ARTICLE IV
### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Impairment of Claims:

The claims of Classes 1B, 2A, 2B and 3 are impaired under the Plan. The claims of all other classes are unimpaired under the plan. All impaired classes are entitled to vote as set forth below: Claims and interests shall be treated as follows under this Plan:

4.02 Administrative Claims:

To the best of their knowledge, the Debtor is current with administrative creditors except with respect to the Debtor's attorneys. Unpaid legal and professional fees owed to the Law Offices of Andrew H. Griffin, III is estimated to be approximately $35,000.00 as of the Effective Date of the Plan. The Debtor and the professional will enter into a payment agreement for post-confirmation payments if there are insufficient funds on hand to pay the administrative claim in full.

4.03 Class 1A

OneWest Bank ("OneWest Bank") shall have an Allowed Secured Claim secured by the Property commonly known as 20516 Rancho Villa Road, Ramona, California. The Claim of OneWest Bank to the extent allowed is a secured claim under §506 of the Code. Debtor will surrender the above collateral on the Effective Date of the Plan.  The confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan.  Any secured claim is satisfied in full through surrender of the collateral.  Any deficiency claim is a general unsecured claim treated in Section 2B. The Creditor in this class shall retain its interest in the collateral. **This secured claim is not impaired and is not entitled to vote on confirmation of the Plan.**

On or about October 25, 2012, Creditor filed a Proof of Claim against the Debtor's

Bankruptcy estate in the amount of $1,436,502.49 secured by the Subject Property with prepetition arrears in the amount of $229,654.83. A copy of Creditor's Proof of Claim is on file with this Court's Claims Register as Claim Number 6.

Class 1B

The claim of Wells Fargo Home Mortgage to the extent allowed, is a secured claim under §506 of the Code. The claim is impaired. The legal, equitable and contractual rights to which such claim entitles the holder of such claim are altered.

The Debtor and Creditor have entered into the following stipulation:

1. "Creditor (its successors and assigns) shall have a secured claim in the amount of $377,121.82 to be amortized over 30 years at a fixed interest rate of 4.5% per annum (the "**Secured Claim**").

2. Creditor shall have an unsecured claim in the amount of $144,174.82 (the "**Unsecured Claim**"). Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issued to general unsecured creditors under Debtors' Chapter 11 Plan, as amended.

3. Debtors shall tender regular monthly payments of principal and interest to Creditor (and/or its servicer) in the amount of $1,910.82 on the first day of each month for the Secured Claim commencing on April 1, 2013, and continuing on the first day of each month thereafter until March 1, 2043, when all outstanding amounts due under the Secured Claim are to be paid in full.

4. In addition to the principal and interest payment described in paragraph 3 of this Stipulation, Debtors shall tender to Creditor (and/or its servicer) all necessary escrow payment for any and all real property taxes and/or real property insurance advances as required by Creditor

(and/or its servicer) and in accordance with any requirements set forth in the Note and Deed of Trust. Debtors shall tender the necessary escrow payments together with the regular monthly mortgage payments described in paragraph 3 above, commencing on April 1, 2013 and continuing thereafter until March 1, 2043, at which time the Secured Claim and any related escrow charges must be paid in full. Currently, the amount of the monthly escrow payment is $203.48; however, Debtors understand this amount is subject to change.

5.  In the event of any default on any of the provisions of this Stipulation, Creditor shall provide written notice, via certified mail, to Debtors at the Subject Property and to Debtors' attorneys of record, provided the Debtors' bankruptcy remains active. If Debtors fail to cure the default or payment default with certified funds after passage of thirty (30) calendar days from the date said written notice is place in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate, unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property, including unlawful detainer, without further notice, order, or proceeding of this Court.

6.  The acceptance by Creditor (and/or its servicer) of a late or partial payment shall not act as a waiver of Creditor's right to proceed hereunder.

7.  Except as otherwise expressly provided herein, all remaining terms of the Note and Need of Trust, which are incorporated herein by reference, shall govern the treatment of Creditor's Secured Claim.

8.  In the event that Creditor is granted relief from the automatic stay, the parties hereby

stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

9.   In the event the Debtors default under this Stipulation and Creditor (and/or its servicer) forwards a 30-day default letter to Debtors, Debtors shall also be required to tender to Creditor (and/or its servicer) its reasonable attorneys' fees and costs incurred for each default letter submitted, in addition to said described default amount stated therein, in order to cure the default. Any notice of default that Creditor (and/or its servicer) provides Debtors and/or Debtors' attorneys pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C §1692.

10.  At the request of the Creditor (and/or its servicer), Debtors shall execute such document as required by Creditor (and/or its servicer) to reflect the Debtors as the borrower of the Secured Claim, and to modify the terms of the Loan obligation to conform to the provisions of this Stipulation as Creditor (and/or it servicer) deems necessary.

11.  In the event the Debtors seek to sell the Subject Property at anytime prior to receiving their Chapter 11 discharge, Creditor (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless its receives proceeds from the sale of the Subject Property in an amount not less than the unmodified, original outstanding balance owing under the terms of the Note and Deed of trust, less any payments made and received by Creditor (and/or its servicer) to such date. If the proposed sale of the Subject Property is for less than the unmodified, outstanding balance owing under the Note and Deed of trust, then Creditors' consent must be obtained in writing prior to any such sale. In the event the Debtors seek to sell the Subject Property after receiving their Chapter 11 discharge, the foregoing requirements of this paragraph 11 no longer apply; however, in no event shall the sale of the Subject Property be for less than Creditor's Secured Claim, less any payments

made and received by Creditor (and/or it servicer) to such date.

12. The terms of this Stipulation may not be modified, altered, or changed by the Debtors' Chapter 11 Plan; any subsequently filed amended or modified Chapter 11 Plan of Reorganization or any other on the foregoing without the express written consent of the Creditor. The above terms of this stipulation shall be incorporated into the Debtors' Chapter 11 Plan and/or any subsequently filed amended or modified Chapter 11 Plan and confirmation order thereon. In the event of a conflict between the terms or provisions of this Stipulation and Debtors' Chapter 11 Plan or any amendments or modifications thereto, the terms of this Stipulation shall control.

13. In the event Debtors' case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Note and the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

14. In exchange for the foregoing, this Stipulation shall constitute a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization, as amended, for the Secured Claim and the Unsecured Claim" [Filed with the Court on April 23, 2013, as docket number 74]

Class 1C

The Claim of Toyota Motor Credit to the extent allowed is a secured claim under §506 of the Code on the personal property vehicle 2008 Toyota Tundra. The Debtor does not seek to modify the terms and conditions on the original note. Debtor will surrender the above collateral on the Effective Date of the Plan. The confirmation order will constitute an order for relief from stay as of the Effective Date of the Plan if not sooner. Any secured claim is satisfied in full through surrender of the collateral. Any deficiency claim is a general unsecured claim treated in Section 4. The Creditor

in this class shall retain its interest in the collateral. **This secured claim is not impaired and is <u>not</u> entitled to vote on confirmation of the Plan.**

<u>Class 2</u> General Unsecured Claims

The Plan provides for holders of Allowed General Unsecured Claims. There will be pro rata Cash payments to Unsecured Creditors. The pro rata shall be (25%) percent, paid at the rate of $3,000.00 each quarter. Generally, payments on the Allowed General Unsecured Claims shall be made on a quarterly basis after the Effective Date if the Debtor is current with Secured Creditors. The Allowed General unsecured Claims that are not paid in full from distributions within the Plan shall be discharged (subject to Debtor's motion pursuant to 11 USC Section 1141) at the expiration of sixty (60) months form the Effective Date ("Discharge Date"). The Debtor reserves the right to seek an order from the bankruptcy court granting a discharge of his debts before the Discharge Date through a noticed motion. Notwithstanding the occurrence of the Discharge Date the Reorganized Debtor's bankruptcy will remain open for the purpose of disbursing proceeds in accordance with this plan.

**<u>SUMMARY OF PLAN TREATMENT</u>**

| Class | Impairment | Treatment |
|---|---|---|
| **CLASS 1 Secured Claims** | | |
| OneWest Bank (1A) | Unimpaired. | To be surrendered and claim rejected. |
| Wells Fargo Home Mortgage (1B) | Impaired. | Partially secured and Partially unsecured (Treated in Class 2B). |
| Toyota Motor Credit | Unimpaired. | Reaffirmed. |
| **Class 2 – General Unsecured Creditors** | | Debtor will make the following quarterly distributions for a pro rata payment of 25% of the Total claim amounts. |
| **Class 2A Small Claims Convenience Class** | | |
| City of San Diego | Impaired. | $36.31 to be paid on effective date |
| Credit Management LP | Impaired. | $240.80 to be paid on effective date |

| Class 2B General Unsecured Claims | | Quarterly Payment | Total Payment |
|---|---|---|---|
| American Express Bank FSB (Claim No. 1) | Impaired. | $710.00 | $14,217.47 |
| LVN Funding, LLC assignee of Chase, Resurgent Capital Services (Claim No. 4) | Impaired. | $101.94 | $2,038.84 |
| PYOD, LLC assignee of B-Line, LLC, Resurgent Capital Services (Claim No. 5) | Impaired. | $206.74 | $4,134.71 |
| Alliance One Receivable | Impaired. | $15.71 | $314.25 |
| Expo/CBNA. | Impaired. | $112.48 | $2,249.50 |
| Receivables Performance | Impaired. | $14.15 | $283.00 |
| Verizon Wireless | Impaired. | $20.51 | $410.25 |
| Well Fargo Bank (Unsecured Claim of 1B) | Impaired. | $1,802.19 | $36,043.71 |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

None.

(a)    The Debtor does not assume executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan, or other applicable date:

- 11 -

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty (20) days after the date of the order confirming this Plan.

### ARTICLE VII
### MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01 Reorganized Debtor**. On the Effective Date of the Plan, Scott I. Talle shall become the Reorganized Debtor, and shall continue to operate its business.  Debtor will have approximately $20,000.00 on effective date to pay administrative claims and allowed unsecured claims.

**7.02 Distributions on Effective Date of the Plan**. On the Effective Date of the Plan, the Reorganized Debtor shall pay the following Claims in full:

1.      Unpaid United States Trustee fees calculated to the Effective Date of the Plan; and

2.      Administrative Claims.

**7.03 Distributions Within Thirty (30) Days After the Effective Date of the Plan. (Administrative Convenience Claims)**. On or before (thirty) 30 days after the Effective Date of the Plan, the Reorganized Debtor shall pay all Administrative Convenience Unsecured Claims in full, in cash. Administrative Convenience claims are claims $1,000.00 or less, or which are reduced by creditors to $1,000.00.

**7.04 Insiders Employed by Reorganized Debtor**. After the Effective Date of the Plan the officers and directors of the Reorganized Debtor, and their compensation, will be as follows:

| Insider | Position | Compensation |
|---|---|---|
| Scott I. Talle, Debtor | Debtor | $7,637.00 per month |

**7.05 Further Financial Reorganization**. Prior to substantial consummation of the Plan, to the extent the Reorganized Debtor finds it (i) desirable to do so to accelerate performance of the Plan, or (ii) necessary to do so, it may seek a modification of the Plan which may provide for further reorganization.

**7.06 Enforcement of Claims**. After the Effective Date of the Plan, the Reorganized Debtor shall retain and enforce claims belonging to the Estate. Such claims include, without limitation, claims based on the avoiding powers contained in 11 U.S.C. §§544, 545 and 547 – 553, inclusive.

**7.07 Grace Period**. Except as otherwise specifically provided in this Plan, actions required to be taken by the Reorganized Debtor shall be accomplished as quickly as practicable after the Effective Date of the Plan. Any payment or act required to be made or done under this Plan shall be made or done no later than thirty (30) days after the date such payment is required to be made.

**7.08 Retained Bankruptcy Court Jurisdiction**. The jurisdiction of the Court shall continue after the Effective Date of the Plan, whether or not the case is closed, with respect to the following:

**7.08.1** Determination of the allowability of deficiency claims, disputed claims, together with the claims of Debtor for affirmative relief;

**7.08.2** Assumption or rejection of unexpired leases and executory contracts, and determination of disputed claims arising out of rejections;

**7.08.3** Determination of any tax liability under §505 of the Bankruptcy Code;

**7.08.4** Determinations of requests for payment of claims entitled to priority under §507(1)(1) of the Bankruptcy Code;

**7.08.5** Resolution of any disputes regarding interpretation of the Plan;

**7.08.6** Implementation or modification of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation appropriate orders to protect the

Reorganized Debtor from creditors' actions and to enforce the injunction referred to in Section 7.10 of this Plan; and

      **7.08.7** Adjudication of any claims for relief by the Reorganized Debtor based on transactions or events which arose before or after the date of the petition or the Effective Date of the Plan, including without limitation, claims for relief on behalf of the Estate based on avoiding powers in §§544, 545 and 547 -553, inclusive, of the Code.

      **Section 7.9 Effects of Confirmation of the Plan**. Confirmation of the Plan:

      **Sub-Section 7.9.1** Binds the Reorganized Debtor, any creditor, and any person or entity acquiring property under the Plan, to the Plan's provisions;

      **Sub-Section 7.9.2** Vests all of the property of the Estate in the Reorganized Debtor free and clear of all claims and interest of creditors, except as otherwise provided in the Plan;

      **Sub-Section 7.9.3** Discharges the Reorganized Debtor from any debt that arose before confirmation of the Plan except as provided in the Plan;

      **Sub-Section 7.9.4** Voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of Scott I. Talle with respect to a debt discharged; and

**Sub-Section 7.9.5** Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of Scott I. Talle.

      **7.10 Injunctions Against Action to Enforce Pre-Plan Confirmation Debts**. The order confirming the Plan shall include a provision that enjoins all parties in interest: (i) from taking any action to recover property from the Reorganized Debtor on account of a debt that arose before confirmation of the Plan; and (ii) against the commencement or continuation of an action, the

employment of process, or an act, to collect, recover or offset any such debt that arose before confirmation of the Plan.

**7.11 Retiree Benefits**. The Debtor was not obligated, prior to the Petition Date, to pay retiree benefits, as that term is defined in §1114 of the Bankruptcy Code, and undertakes no obligation to do so after the Effective Date of the Plan.

**7.12 Choice of Law; Venue**. To the extent not inconsistent with United States Bankruptcy Law, the laws of the State of California shall apply with respect to the interpretation and enforcement of the Plan. Any action to interpret or enforce the Plan, and of its provisions or any instrument executed pursuant to provisions of the Plan, may be brought either in the United States Bankruptcy court, Southern District of California or in the Superior Court, San Diego County.

**7.13 Special Notice**. The Reorganized Debtor shall compile and maintain, and make available to interest parties, a Special Notice list. The List shall contain the names and address of all parties in interest who after the Effective Date of the Plan, ask, in writing, to be added to the List. The Order Confirming the Plan shall contain a provision advising all parties in interest of their opportunity to request special notice of actions proposed to be taken. A copy of the Order shall be served by first class mail on all parties in interest. No notice of any motion, application or action proposed to be taken after the Effective date of the Plan need be given to nay party not on the Special Notice List.

**7.14 Debtor's option to seek Plan Confirmation under 11 U.S.C. Section 1129(b)(2).** If necessary, the Debtor may seek confirmation of this Plan pursuant to §1129(b)(1) of the Bankruptcy Code.

**7.15 DEFAULT PROVISIONS**

The following are Events of Default under the Plan:

- 15 -

Notwithstanding any contrary provision in the Plan, the Disclosure Statement, any pleading or other document filed in this case, or any other document, contract or agreement, and except as provided for, should the Debtor fail in any material respect to timely perform its duties and commitments under the Plan, including, but not limited to, making the payments to holders of claims called for in the Plan, any party interest adversely affected by such failure must give notice, to Debtor and Debtor's counsel, in writing, of such failure to perform (a "Notice of Default"). If such default is not cured within fourteen days, from the date of service of the Notice, the adversely affected party may file a motion with the Court to determine what relief may be appropriate because of such default, including but not limited to the entry of an order to timely perform under the Plan, dismissal of the case, or conversion of the case to one under Chapter 7; provided, however that if a final decree closing this case has been entered by the Court, the adversely affected party may seek relief in state court.

A. Post-Confirmation Conversion/Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, than all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

B. Revocation of the Order Confirming the Plan.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation with 180 days after the entry of the

order of confirmation.

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    <u>Effective Date of Plan</u>.  The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**ARTICLE IX**
**DISCHARGE**

9.01    <u>Discharge</u>.  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in §1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under §523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

# ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1 <u>Completion of Plan</u>: This Plan shall be deemed completed upon the Reorganized Debtor making all distributions from the Plan Distribution Account and other payments required under the Plan as provided above. Notwithstanding the foregoing, the Plan will be deemed completed sixty (60) months after the Effective Date.

10.2 <u>Substantial Consummation</u>: As of the Effective Date, upon the execution and delivery of the Plan Documents and commencement of distributions under the Plan, the Debtor may seek an order from the Bankruptcy Court determining that the Plan has been substantially consummated pursuant to section 1101 of the Bankruptcy Code.

10.3 <u>Amendments</u>:

10.3.1 <u>Plan Modifications</u>: This Plan may be amended, modified, or supplemented by the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims pursuant to this Plan, the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

10.4 <u>Revocation or Withdrawal of this Plan</u>: The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtor takes such action, this Plan shall be deemed null and void.

10.5 <u>Cramdown</u>: In the event a Class votes against this Plan, and this Plan is not withdrawn as provided above, the Debtor reserves the right to seek a "cramdown" of this Plan pursuant to section 1129(b) of the Bankruptcy Code. To the extent any Class is deemed to reject this Plan by virtue of the treatment provided to such Class, this Plan shall be  "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

10.6 <u>Confirmation Order</u>: The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

10.7 <u>Severability</u>: If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable pursuant to its terms.

10.8 <u>Governing Law</u>: Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the Sate of California, without giving effect to the principles of conflict of laws thereof.

10.9 <u>Section 1125(e) of the Bankruptcy Code</u>: The Debtor has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor (and each of her respective affiliates, agents, directors, officers, employees, advisors and attorneys) has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale and purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance or rejections of this Plan or offer, issuance, sale or purchase of the securities offered and sold under this Plan.

10.10 <u>Expedited Determination</u>: The Reorganized Debtor is hereby authorized to file a request for expedited determination under section 502(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor, or the Reorganized Debtor, as the case may be.

10.11 <u>Time Bar to Payments</u>: The Debtor shall stop payment on any distribution check that has not cleared through the Distribution Account within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any such checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check was issued. Any claim in respect of such voided check shall be made within one hundred and eighty (180) days after the date of the

issuance of such voided check. If no claim is made as provided herein, all Claims in respect of voided checks shall be discharged and forever barred. The amount represented by such unclaimed checks, and those undeliverable, after commercially reasonable diligence, shall be distributed pro-rata to the remaining holders of Allowed Claims, pursuant to the terms of this Plan. Distributions to holder so Allowed Claims shall be made to their last known address, which shall be presumed to be as set forth on the proof of claim filed by such Claimant, or if no proof of claim was filed, on the Schedules filed by the Debtor as may have been amended from time to time, unless a Claimant shall have supplied a new or corrected address in writing to the Debtor within two weeks prior to a Distribution to permit the Debtor to revise its records accordingly.

10.12 <u>Fractional Distributions</u>: Notwithstanding anything to the contrary contained in the Plan, no Cash payments of fraction of cents shall be made. Fractional cents shall be rounded to the nearest whole cent.

10.13 <u>Time</u>: In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

10.14 <u>Waiver of Bankruptcy Rule 7062</u>: The Confirmation Order shall include: (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order; and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

10.15 <u>Compliance with Tax Requirements</u>: In connection with the Plan, the Debtor and the Reorganized Debtor, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and any distributions under the Plan, shall be subject to such withholding and withholding requirements. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole

and exclusive responsibility for the satisfaction and payment of any tax obligations, on account of any distributions. The Debtor has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to the Debtor for the payment of any tax obligations.

10.16 <u>Notices</u>: All notices, requests and demands to or upon the Debtor and the Reorganized Debtor, to be effective shall be in writing (including facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtor:

Scott I. Talle
344 N. Letton Street
Ramona, CA 92065

and

Andrew H. Griffin, III, Esq.
**Law Offices of Andrew H. Griffin, III**
275 E. Douglas Avenue, Suite 112
El Cajon, California 92020
Telephone Number (619) 440-5000
Fax Number (619) 440-5991

10.17 <u>Exhibits</u>: All exhibits and schedules to this Plan, including the Plan Supplement if any, are incorporated by reference into this Plan and are made a part hereof as if more fully set forth herein.

10.18 <u>Binding Effect</u>; The provisions of this Plan (including the Exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with this Plan) and the Confirmation Order shall be binding on (i) Debtor, (ii) all orders of Claims against the Debtor, whether or not impaired under the Plan and whether or not such holders have accepted or rejected

the Plan, (iii) each Person or entity receiving, retaining or otherwise acquiring property pursuant to the terms of the Plan, (iv) any non-Debtor part to an executory contract or unexpired lease with the Debtor, (v) and any Person or entity making an appearance in this Reorganization Case, and (vi) each of the foregoings' respective heirs, successors, assigns, executors, administrators, officers, directors and agents.

10.19 <u>Business Records</u>; The Debtor's business records shall be maintained at Debtor's present business location.

10.20 <u>Means for Execution of Plan Reorganization</u>: The Payment to be made under the Plan will be funded from the revenues of the rental properties that shall be utilized to make the required distributions to creditors for a period not to exceed sixty (60) months from the Effective Date of the Plan. After the Effective Date of the Plan, the Debtor shall run the business. The Debtor shall be entitled to retain all earnings of the Debtor received after the Effective Date of the Plan subject only to the payment requirements of the Plan.

10.21 <u>Compliance with Post-Confirmation Reporting and U.S. Trustee's Fees</u>;

On the Effective Date of the Pan, the Debtor shall be impressed with the duty to comply with the post-confirmation requirements and U.S. Trustee fees set forth in 28 U.S.C. Section 1930(a)(b).

## ARTICLE XI
## CONCLUDING STATEMENTS BY DEBTOR

Since the filing for bankruptcy, the Debtor has worked diligently to protect and preserve the assets of the estate and the collective rights of its creditors and to promulgate a Plan of Reorganization for repayment of claims to all of her creditors. The Debtor has prepared this Plan in an attempt to treat all creditors in a fair and equitable fashion as provided for by the provisions of the United States Bankruptcy Code.

In summary, Debtor believes that acceptance of this Plan will be in the best interest of Debtor's reorganization and payment of all of their creditor's claims to the greatest extent possible.

By: /s/ Scott I. Talle
     Scott I. Talle, The Plan Proponent


By: /s/ Andrew H. Griffin, III
     Andrew H. Griffin, III, Esq.

# Exhibit "B"

Scott Talle Case No.12-11243-LT11

| FINANCIAL OPERATING PROJECTIONS | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Bimbo Bakeries | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| **TOTAL INCOME** | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| | | | | | | | | | | | | |
| ***General/Administrative Expenses*** | | | | | | | | | | | | |
| Mortgage (Wells Fargo [1B]) | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 |
| Electricity and heating | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Water and sewer | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Telephone | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 |
| Transportation | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Home Maintenance | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Medical and Dental | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Food | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| Clothing | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Insurance | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 |
| Recreation | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Laundry and Dry Cleaning | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| **TOTAL EXPENSES** | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 |
| | | | | | | | | | | | | |
| **NET INCOME** | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 |
| | | | | | | | | | | | | |
| **CLAIMS OUTSTANDING** | | | | | | | | | | | | |
| Administrative Expenses-Tustee | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 |
| Administrative Expenses- Law Office of Andrew H. Griffin,III | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Priority Claim [IRS] | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| General Unsecured Claims (25%) | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| **TOTAL CLAIMS** | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 |
| | | | | | | | | | | | | |
| **ENDING CASH** | $23 | $46 | $69 | $92 | $115 | $138 | $161 | $184 | $207 | $230 | $253 | $276 |

Scott Talle Case No.12-11243-LT11

| FINANCIAL OPERATING PROJECTIONS | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Bimbo Bakeries | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| **TOTAL INCOME** | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| | | | | | | | | | | | | |
| **General/Administrative Expenses** | | | | | | | | | | | | |
| Mortgage (Wells Fargo [1B]) | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 |
| Electricity and heating | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Water and sewer | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Telephone | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 |
| Transportation | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Home Maintenance | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Medical and Dental | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Food | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| Clothing | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Insurance | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 |
| Recreation | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Laundry and Dry Cleaning | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| **TOTAL EXPENSES** | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 |
| | | | | | | | | | | | | |
| **NET INCOME** | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 |
| | | | | | | | | | | | | |
| **CLAIMS OUTSTANDING** | | | | | | | | | | | | |
| Administrative Expenses-Tustee | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 |
| Administrative Expenses- Law Office of Andrew H. Griffin,III | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Priority Claim [IRS] | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| General Unsecured Claims (25%) | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| **TOTAL CLAIMS** | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 |
| | | | | | | | | | | | | |
| **ENDING CASH** | $276 | $299 | $322 | $345 | $368 | $391 | $414 | $437 | $460 | $483 | $506 | $529 |

Scott Talle Case No.12-11243-LT11

| FINANCIAL OPERATING PROJECTIONS | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Bimbo Bakeries | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| **TOTAL INCOME** | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| | | | | | | | | | | | | |
| **General/Administrative Expenses** | | | | | | | | | | | | |
| Mortgage (Wells Fargo [1B]) | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 |
| Electricity and heating | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Water and sewer | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Telephone | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 |
| Transportation | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Home Maintenance | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Medical and Dental | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Food | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| Clothing | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Insurance | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 |
| Recreation | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Laundry and Dry Cleaning | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| **TOTAL EXPENSES** | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 |
| | | | | | | | | | | | | |
| **NET INCOME** | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 |
| | | | | | | | | | | | | |
| **CLAIMS OUTSTANDING** | | | | | | | | | | | | |
| Administrative Expenses-Tustee | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 |
| Administrative Expenses- Law Office of Andrew H. Griffin,III | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Priority Claim [IRS] | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| General Unsecured Claims (25%) | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| **TOTAL CLAIMS** | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 |
| | | | | | | | | | | | | |
| **ENDING CASH** | $529 | $552 | $575 | $598 | $621 | $644 | $667 | $690 | $713 | $736 | $759 | $782 |

Scott Talle Case No.12-11243-LT11

| FINANCIAL OPERATING PROJECTIONS | Month 37 | Month 38 | Month 39 | Month 40 | Month 41 | Month 42 | Month 43 | Month 44 | Month 45 | Month 46 | Month 47 | Month 48 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Bimbo Bakeries | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| **TOTAL INCOME** | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| | | | | | | | | | | | | |
| **General/Administrative Expenses** | | | | | | | | | | | | |
| Mortgage (Wells Fargo [1B]) | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 |
| Electricity and heating | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Water and sewer | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Telephone | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 |
| Transportation | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Home Maintenance | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Medical and Dental | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Food | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| Clothing | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Insurance | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 |
| Recreation | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Laundry and Dry Cleaning | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| **TOTAL EXPENSES** | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 |
| | | | | | | | | | | | | |
| **NET INCOME** | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 |
| | | | | | | | | | | | | |
| **CLAIMS OUTSTANDING** | | | | | | | | | | | | |
| Administrative Expenses-Tustee | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 |
| Administrative Expenses- Law Office of Andrew H. Griffin, III | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Priority Claim [IRS] | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| General Unsecured Claims (25%) | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| **TOTAL CLAIMS** | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 |
| | | | | | | | | | | | | |
| **ENDING CASH** | $782 | $805 | $828 | $851 | $874 | $897 | $920 | $943 | $966 | $989 | $1,012 | $1,035 |

Scott Talle Case No.12-11243-LT11

| FINANCIAL OPERATING PROJECTIONS | Month 49 | Month 50 | Month 51 | Month 52 | Month 53 | Month 54 | Month 55 | Month 56 | Month 57 | Month 58 | Month 59 | Month 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| Bimbo Bakeries | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| **TOTAL INCOME** | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 | $7,637 |
| | | | | | | | | | | | | |
| **General/Administrative Expenses** | | | | | | | | | | | | |
| Mortgage (Wells Fargo [1B]) | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 | $2,114 |
| Electricity and heating | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Water and sewer | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Telephone | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 | $175 |
| Transportation | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Home Maintenance | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Medical and Dental | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Food | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 | $700 |
| Clothing | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Insurance | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 | $633 |
| Recreation | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Laundry and Dry Cleaning | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| **TOTAL EXPENSES** | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 | $5,547 |
| | | | | | | | | | | | | |
| **NET INCOME** | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 |
| | | | | | | | | | | | | |
| **CLAIMS OUTSTANDING** | | | | | | | | | | | | |
| Administrative Expenses-Tustee | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 | $217 |
| Administrative Expenses- Law Office of Andrew H. Griffin,III | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Priority Claim [IRS] | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| General Unsecured Claims (25%) | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| **TOTAL CLAIMS** | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 | $2,067 |
| | | | | | | | | | | | | |
| **ENDING CASH** | $1,035 | $1,058 | $1,081 | $1,104 | $1,127 | $1,150 | $1,173 | $1,196 | $1,219 | $1,242 | $1,265 | $1,288 |